IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

```
ENTERED
APR 2 1 2005
U.S. BANKRUPTCY COURT
MDNC - 3D
```

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DOUG BAITY TRUCKING, INC. | ) | CASE NO. 04-13537 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

## MEMORANDUM OPINION

An employee of Doug Baity Trucking, Inc. (the "Debtor") allegedly rammed a tractor-trailer owned by the Debtor into Peggy's Seafood Restaurant in Swann, North Carolina, causing property damage and numerous personal injuries. The Debtor subsequently filed for relief under Chapter 7 of the Bankruptcy Code, and the Chapter 7 trustee (the "Trustee") claimed that the proceeds of the Debtor's liability insurance policy (the "Policy") were property of the bankruptcy estate. One of the personal injury tort claimants, Laura Mayne Holder ("Holder"), moved for relief from the automatic stay to pursue her claims against the Debtor and the Policy in state court. Holder objected to any of the insurance proceeds being used to pay either the Trustee or the non-tort creditors of the Debtor's bankruptcy estate.

This matter came before the Court for hearing on March 24, 2005, in Greensboro, North Carolina. After opening statements were made by the parties, the Court indicated that it had strong doubts about whether the liability insurance proceeds were property of the Debtor's bankruptcy estate. At the request of the parties, the Court took a recess, and the parties reached an agreement whereby Holder – and other represented tort claimants – would be allowed to pursue their interests in State court, and the Trustee would not pursue his theory that the insurance proceeds were property of the estate.[1] This memorandum opinion memorializes the Court's reasons for concluding that the proceeds of the Policy are not property of the Debtor's bankruptcy estate in this Chapter 7

---

[1] At that time, the other known tort claimants orally joined in the motion for relief filed by Holder. Those claimants are: Peggy's Seafood Restaurant, Inc.; Nicole R. Hardee, Administratrix for the Estate of Dale Reece Hardee; and Elizabeth B. Smith.

-1-

proceeding.

## I. BACKGROUND

The Policy is a $1,000,000 liability insurance policy issued by Carolina Casualty Insurance ("CCI"); it covers incidents arising from the acts or omissions of its truck drivers. The Debtor is the named insured on the Policy. Part of the Policy, titled "CCI Truckers Coverage Form," expressly states, "We [CCI] will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies . . . ." In the event of a covered accident, CCI instructed the Debtor to "[a]ssume no obligation, make no payment or incur no expense without [CCI's] consent, except at the [Debtor's] own cost." CCI also has a duty to defend the Debtor. The Policy does not afford any rights to a third party to sue CCI by direct action unless CCI agrees in writing that it has a duty to pay the sums claimed or unless the amount of CCI's obligation has been finally determined after trial. Unfortunately, the four lawsuits currently pending against the Debtor as a result of the July 19, 2004 accident are allegedly in excess of the liability limits of the Policy. On December 2, 2004, CCI issued a check to the Trustee for $998,000.00,[2] which the Trustee is holding in an interest-bearing account.

On its Schedule D, the Debtor lists its secured creditors as holding $604,000.00 in claims against the estate. Excluding any amount deemed to be owed to the tort claimants, the Debtor estimated that it had $356,796.23 in general unsecured claims. The Debtor's total liabilities exceed its total assets by about $233,000.00; thus, while the unsecured creditors of the Debtor's estate are likely to receive a distribution, that distribution will likely be less than 100%.[3]

## II. DISCUSSION

The Trustee contends that the proceeds of the Policy are property of the Debtor's bankruptcy

---

[2] The remaining $2,000.00 was paid on a property claim.

[3] Correlative to the motion filed by Holder seeking relief from the automatic stay, the Trustee had proposed procedures for the purposes of dispute resolution and for the allowance and disallowance of claims against the estate arising out of the allegedly negligent or intentional act of the Debtor's employee. The Trustee initiated discussions and conducted negotiations with the known tort claimants to determine if all parties could agree on a procedure. At the time of the hearing, however, the parties had not reached a consensus, and it was agreed among the parties that the stay should be lifted.

estate because the Debtor is the named insured on the Policy.  As argued by the Trustee, the "value of the Liability Insurance Policy [to the estate] was either its contractual duty to defend the debtor from any claims for liability . . . to make payments on behalf of the debtor to those who had liability claims against the debtor, or to turn over the policy limits to the policy owner."  The Trustee provides no citation to any particular Policy provision to support the latter statement, and the Court is unable to locate any obligation under the express language of the Policy that gives the Debtor the right to compel CCI to pay the liability insurance proceeds to the Debtor rather than to an uncompensated tort claimant.

The Court is convinced that the proceeds of the Debtor's insurance policy are not property of the bankruptcy estate based on the fundamental distinctions between policies of liability as opposed to policies of first-party indemnification, which, when dovetailed with Section 541(d) of the Bankruptcy Code, demonstrates that the Debtor has no equitable interest in the proceeds of a liability insurance policy.

## A. Section 541 of the Bankruptcy Code

Section 541(a) of the Bankruptcy Code defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  Although property of the estate is to be interpreted broadly, United States v. Whiting Pools, 462 U.S. 198, 204-05 (1983), one important limitation is found in Section 541(d), which states, "Property in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, the Bankruptcy Code exemplifies the well-settled maxim that no one can give what he does not have.  This distinction – between holding legal title to a policy of insurance and having equitable title to the proceeds of that policy– is critical.  The Trustee has the initial, prima facie burden to show that the Debtor has an ownership interest in property; thereafter, the burden of proving that property is removed from the ambit of the estate under Section 541(d) is on the party claiming the equitable interest.  First Federal of Michigan v. Barrow, 878 F.2d 912, 915 (6th Cir. 1989)("[H]aving asserted a constructive trust of which they were beneficiaries, the appellants assumed the burden of identifying the sums of their entitlements."); Daly v. Radulesco (In re Carrozzella & Richardson),

247 B.R. 595, 602 (B.A.P. 2nd Cir. 2000)("Once the Trustee established that the Debtor had control of the Account . . . then the burden of proof shifted to the Defendants to prove (1) that the Debtor had only legal title to the Defendants' money."); Pare v. Campopiano (In re Campopiano), No. 92-1126, 1994 Bankr. LEXIS 1849 at *9 (Bankr. D.R.I. 1994)(holding that a prima facie showing was made that insurance proceeds were property of the estate when a draft for fire loss damages was made payable to the debtor); Davis v. Moon (In re Usery), 158 B.R. 470, 472 (Bankr. W.D. Mo. 1993)(holding that in a turnover action the trustee bears the initial burden of proof to establish a prima facie case that the subject of the turnover action is property of the estate); see also Miller v. Rose, 532 S.E.2d 228, 234 (N.C. Ct. App. 2000)("[T]he party seeking to establish a trust has the burden of proving its existence by clear, strong, and convincing evidence.").

**B. The Indemnification Principal**

When dealing with policies of insurance, a fundamental distinction exists between first-party policies of indemnification and policies of liability. A first-party policy of indemnity provides payment in the event of a loss; there is no cause of action against the insurance company "until the liability has been discharged, as by payment of the judgment by the insured." 15-111 Appleman on Insurance Law and Practice § 111.1[C] (2nd ed. Matthew Bender 2005). This requirement for first-party policies of indemnity is consistent with the foundation of insurance law – restoration of an insurable interest, dollar for dollar, such that the insured does not reap any net profit or suffer any significant loss from the happening of an insured event. § 111.1[A]. In contrast, a policy of liability is, in essence, a form of third-party indemnity insurance because the indemnification is not made to the insured; rather, payment is made to the third-party claimant for that party's loss. § 111.1[C].

> Liability insurance is customarily described and classified as third-party insurance because the liability insurer's duty to pay runs not directly to the insured but directly (on the insured's behalf) to a third-party claimant who is injured by the insured's conduct. For instance, if an insured negligently injures a person not in privity of the insurance contract, that third party has a claim usually in tort against the insured. The third party's claim is not a contract claim under the liability insurance contract. But if the third party reduces its claim to a judgment (or a settlement between the insured, insurer and third party), the insured will suffer a loss. However, the insured's loss is "indirect" and the third party's loss is "direct." The liability insurer reimburses ("indemnifies") its insured for the insured's indirect loss, but payment in practical effect runs directly to the third-party claimant. The liability insurer essentially reimburses its insured for any liability it may have to the third party by paying the

-4-

third party on the insured's behalf and benefit. The insured is only a conduit for transferring the insurance proceeds from the liability insurer to the third party. Thus, in general understanding, liability insurance is designed to protect unknown third parties but not indemnify them in the classical insurance sense . . . .

. . . .

The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured. Under an indemnity policy, the insured must have suffered an actual money loss before the insurer is liable. In other words, the distinction between "indemnity against liability" and "indemnity against loss" is that in "indemnity against liability" the essence of the contract is that event shall not happen, while in "indemnity against loss," indemnity is against consequence of the event if it should happen.

§ 111.1[C] (footnotes omitted).

     Much confusion exists over how to classify the ownership of liability insurance proceeds, perhaps because insurance law is founded on the concept of indemnity, either first-party or third-party, which is often difficult to apply. An indemnity analysis requires the Court to ascertain exactly what loss the insured on a liability insurance policy has suffered before payment of that loss becomes property of the estate under Section 541 of the Bankruptcy Code. Numerous cases on this matter have been issued, some of which are discussed below.

## C. Equitable Interests in Insurance Proceeds

     As stated, property of the estate consists of all a debtor's legal and equitable interests in property, but property for which a debtor holds only legal title becomes property of the estate only to the extent of that legal title, and the estate's interest does not encompass any equitable interest that a debtor does not hold. 11 U.S.C. §§ 541(a)(1), (d). When dealing with a debtor's insurance policy, there is no dispute that the debtor has legal title to the policy itself and that the policy is property of the estate. Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 55 (5th Cir. 1993)("Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself. Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.")(footnotes omitted); National Union Fire Ins. Co. of Pittsburgh, PA v. Titan Energy, Inc. (In re Titan Energy, Inc.), 837 F.2d 325, 330 (8th Cir. 1988)("Though the policy proceeds do not flow directly into the coffers of the estate, they do serve

to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate . . . . [T]he policies here are property of Titan's estate because the estate is worth more with them than without them."); A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994, 1001 (4th Cir. 1986)(holding that an insurance policy is property of the estate and any act that might diminish that policy is subject to the automatic stay). Owning an insurance policy, however, is far different from owning the proceeds of that policy. In re Louisiana World Exposition, 832 F.2d 1391, 1399 (5th Cir. 1987)("The question is not who owns the policies, but who owns the liability proceeds."); Cardinal Casualty Co. v. Correct Mfg. Corp. (In re Correct Mfg. Corp.), 88 B.R. 158, 162 (Bankr. S.D. Ohio 1988)(holding that the insurance contracts were property of the estate only to the extent of the debtor's legal title; the estate's interest did not encompass the right to receive the insurance proceeds).

In determining whether a debtor has any equitable interest in the proceeds of an insurance policy, the benchmark test "is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." Edgeworth, 993 F.2d at 55 ("[W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate."). Thus, in a first-party policy of indemnification, as represented by policies covering loss to the insured as a result of a fire or a collision, the proceeds of that policy are deemed to be property of a bankruptcy estate because the proceeds are paid directly to the debtor; in other words, the insurance proceeds make the debtor whole and the debtor, more or less, is in the same economic position as if the covered loss had never occurred. Id. at 55-56. For example, the right to receive the proceeds of a fire insurance policy is not based on ownership of the proceeds per se; rather, the right to receive the proceeds originates from the terms of the policy. Cf. In re Bailey, 314 B.R. 103, 106 (Bankr. N.D. Miss. 2004)(finding that a loss payable rider modified the collision insurance contract so that the debtor did not have any equitable interest in the proceeds; thus, the proceeds of the policy were payable to the designated beneficiary and were not property of the bankruptcy estate).

With the understanding that ownership of an insurance policy does not necessarily entail ownership of the proceeds of that policy, it is necessary to examine what equitable interest, if any, a debtor has to those proceeds when the contract is one of liability. The consequences of the outcome are critical; once the proceeds of a policy are payable to a debtor, those proceeds might be

-6-

the collateral of secured creditors or subject to the claims of the other unsecured creditors of the bankruptcy estate. In short, once the proceeds are property of the bankruptcy estate, those proceeds are distributed pursuant to the Bankruptcy Code and tort claimants do not enjoy any special priority.[4]

Cases finding that an insured debtor on a liability policy has an equitable interest in the proceeds have generally done so through one or more of three general theories. First, the language of a particular policy might provide the debtor an equitable interest if the proceeds of that policy are payable directly to the debtor. Second, a court might eschew any policy/proceeds distinction and hold that the debtor has an equitable interest solely because the debtor is the named insured on the policy. Third, a court could determine that the net secondary effects that the payment of the insurance proceeds may have on the administration of the bankruptcy estate give the debtor an equitable interest in seeing that the proceeds are paid and applied to claims against the estate.[5]

---

[4] While a tort claimant might be able to successfully argue that a debtor's obligation to it should be excepted from discharge under 11 U.S.C. § 523(a)(6), that remedy is of no value against a corporate debtor in Chapter 7. Corporate debtors are automatically denied a discharge pursuant to Section 727(a)(1).

[5] Additionally, some courts hold that the debtor does not have any interest in the liability insurance proceeds but that the secondary effects that those proceeds have on the estate is significant enough to warrant the imposition of an injunction under Section 105 of the Bankruptcy Code. These courts find that the Section 105 injunction is appropriate to stay all litigation so that company resources may be preserved and so that the debtor can be afforded time to devise an orderly mechanism for dealing with multiple tort claimants. See Johns-Manville Corp v. Asbestos Litigation Group (In re Johns-Manville Corp., 40 B.R. 219, 229 (S.D.N.Y. 1984)(reciting that resolution of insurance coverage issues in one forum would be in the best interests of all parties to the reorganization because fragmenting the relevant issues into various different forums would frustrate the prompt and effective formulation of a plan of reorganization). The propriety of an injunction will depend on whether the case is one of liquidation or reorganization. For example, an injunction might be appropriate in a reorganization case because the debtor is attempting to preserve the benefits derived from the insurance proceeds and because the debtor wants the right to influence and affect decisions relating to causation and damage issues in pending liability actions. Such influence might be necessary to enable a debtor to propose a plan of reorganization capable of attaining the necessary consents from various classes of creditors. In a liquidating case, however, an injunction under Section 105 might not be appropriate. See Correct Mfg. Corp., 88 B.R. at 162. ("In this Chapter 7 case, however, interests in specific proceeds of the [insurance contracts] are not equitably vested in the estate to any meaningful extent . . .  In contrast to the Chapter 11 debtor who has equitable interests in the proceeds of such policies because of its need to decrease

### 1. Terms of the Policy

A debtor may be deemed to have an equitable interest in liability insurance proceeds if the language of the policy provides that a debtor is to be "reimbursed" for any covered claims. This was the result reached in Unsecured Creditors Disbursement Comm. v. Antill Pipeline Constr. Co. (In re Equinox Oil Co., Inc.), 300 F.3d 614, 619 (5th Cir. 2002), wherein the Fifth Circuit held that a policy of "reimbursement" fell within the ambit of casualty, collision, life, and fire insurance policies for which the insured is the beneficiary. In Equinox Oil, the debtor had an oil well blow out. Id. at 617. Numerous remediation creditors responded to clean up the spilled oil and then asserted claims against the debtor for their incurred costs. Id. The debtor failed to pay many of the remediation creditors, and they argued that the debtor's insurer should pay their claims directly. Id. at 619. Of course, the amount of "reimbursement" received by the debtor was directly related to the expenses incurred by the remediation creditors in cleaning up the oil spill, and the result of finding that the debtor had an interest in the proceeds was that the parties responding to the oil spill had to share the proceeds with all other creditors of the estate whose claims were unrelated to the covered incident.[6]

---

liability from which third parties' claims derive, affect the outcome of suits against its insurers, and retain the ability to structure settlements of classes of claims, this estate has no such equitable interests. Therefore, despite the recognition of those types of equitable interests in the cases cited in which suits against insurers were stayed during Chapter 11 reorganization proceedings, those equitable interests are not relevant or present in this case.").

In this case, the Debtor has filed for relief under Chapter 7 of the Bankruptcy Code. There are multiple tort claimants, but they are relatively few in number. While the amount of the tort claims will likely exceed the amount of available insurance proceeds, the only secondary effect that those tort claims have on the estate is to establish the amount of the deficiency claim, if any, after application of insurance proceeds. No party has argued in this case that the secondary effects of suits by the tort claimants would warrant an injunction. Indeed, the settlement reached by the parties establishes the amount of the deficiency claims of the Known Claimants.

[6] The ultimate conclusion reached by the Fifth Circuit in Equinox Oil is that the insurance proceeds were property of the estate because the proceeds were "reimbursement" to the debtor for covered expenses. Equinox Oil has little precedential value to this case inasmuch as the insurance policy in Equinox Oil was classified as one of first-party indemnification and not one of liability. Moreover, this Court disagrees with the holding. In Equinox Oil, the "reimbursement" policy at issue was different from the ordinary property, fire, casualty, or collision type policy. Namely, the remediation creditors making a claim to the proceeds had

Id. Although the Fifth Circuit found an equitable link between the remediation claims and the proceeds of the insurance, that equitable link was not enough to overcome the priority rules of the Bankruptcy Code. Id. See also In re Jasmine, Ltd., 258 B.R. 119, 129 (Bankr. D.N.J. 1999) (recognizing the unfortunate circumstances when insurance claimants are denied the right to insurance proceeds which have become property of the estate). In short, if the terms of the policy provide a debtor with an equitable interest in the proceeds then the terms of that policy govern, and both the legal title and the equitable interest of that policy become property of the bankruptcy estate.

### 2. No Policy/Proceeds Distinction

A court may determine that a debtor has an equitable interest in the proceeds of a liability insurance policy by declaring that because the debtor is the named insured on the policy, the debtor has an equitable interest in the proceeds of that policy. These are the cases relied on by the Trustee in arguing that the insurance proceeds of the Debtor's policy are property of the estate. See Homsy v. Floyd (In re Vitek, Inc.), 51 F.3d 530, 534 (5th Cir. 1995)("[V]irtually every court to have considered the issue has concluded that the policies–and clearly the proceeds of those policies–are property of the bankruptcy estate, irrespective of whether those policies also provide liability coverage . . . . Most courts do not even recognize a technical distinction between ownership of insurance policies and ownership of the proceeds of those policies: They simply conclude that such policies–and, by implication, the proceeds of such policies–are valuable properties of debtors' bankruptcy estates.")(citing, inter alia, MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2nd Cir. 1988); Tringali v. Hathaway Machinery Co., 796 F.2d 553, 560-61 (1st Cir. 1986)). Under this

---

responded to an environmental disaster that would not have occurred but for the activities of Equinox Oil. The insurance proceeds at issue were not compensation for the lost oil or damaged property; rather, the policy was a form of third-party coverage even though it was written as a first-party indemnity contract because it covered the debtor's liability to unknown third parties that cleaned up the debtor's mess. Even if the policy was construed as one of first-party indemnification, the debtor had not paid the remediation creditors what they were owed, so a necessary prerequisite to "reimbursement" had not occurred. The result of the Fifth Circuit's opinion was that unsecured creditors benefitted from the debtor's misfortune. The holding of the case violates two well-settled equitable maxims: (1) no one ought to be enriched at another's expense and (2) no one can derive benefit from his own wrong. The result promoted the form of the agreement over its substance inasmuch as the policy was more analogous to one of liability than to one of first-party indemnification.

theory, there is simply no distinction between ownership of the policy and ownership of the proceeds of that policy. This reasoning avoids any distinction between first-party policies of indemnification and policies of liability, which provide a form of third-party insurance. While simplistic in application, these cases ignore the relevance of Section 541(d) of the Bankruptcy Code and its statutory emphasis on separating naked legal title from equitable interests.[7]

### 3. Secondary Effects Creates an Equitable Interest

A determination that a debtor retains an equitable interest in liability insurance proceeds may be reached by measuring the secondary effect that payment of the insurance proceeds to the tort claimants will have on the remaining claims against the estate. Significantly, under this theory the insurance proceeds themselves are not property of the estate inasmuch as they are payable directly to the insurance claimant irrespective of the priority rules for distribution; rather, the Debtor's purported equitable interest is the benefit of having claims against the estate satisfied out of the insurance proceeds, which has a direct impact on the administration of the bankruptcy estate. Every dollar that an insurance policy pays on a covered claim is an extra dollar for the other creditors of the estate–and potentially for the debtor as well. See A.H. Robins Co., 788 F.2d at 1001-02 ("Any

---

[7] It is very difficult, if not impossible, to reconcile Vitek with decisions of other courts, including previous decisions of the Fifth Circuit. For example, the Fifth Circuit in Edgeworth, 993 F.2d at 53, faced a situation where a physician had obtained a Chapter 7 discharge and a tort claimant later sued the physician for medical malpractice. Importantly, the physician did not assert any claim to the proceeds of his general liability insurance policy in his bankruptcy, he acknowledged that none of the insurance proceeds actually came into his estate for distribution to creditors, and there were no estate claims to the proceeds. Id. at 55-56. Moreover, the debtor could not identify any "secondary impact" on the estate by allowing the tort claim to go forward against the debtor's insurance company. Id. at 56. Reasoning that the policy proceeds could not be made available for distribution to creditors other than to the victims of the physician's medical malpractice, the Fifth Circuit determined that even though the policy was property of the estate, the proceeds of that policy were not. Id. See also Titan Energy, Inc., 837 at 330 ("Though the policy proceeds do not flow directly into the coffers of the estate . . . ."); In re Scott Wetzel Services, Inc., 243 B.R. 802 (Bankr. M.D. Fla. 1999)(holding that a claim against a Chapter 7 debtor's insurance proceeds for the debtor's misappropriation of trust funds did not concern property of the estate because the estate's interests did not encompass the right to receive the proceeds of the insurance policy, no equitable interests existed, and the debtor did not have the right to keep the funds); Correct Mfg. Corp., 88 B.R. at 162 (holding that the estate's interest did not encompass the right to receive the insurance proceeds).

action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay . . . . "). Under this theory, the stay is applicable because of the secondary effects that the payment of insurance proceeds has on the estate. Id. at 997 (explaining that the debtor currently faced more than 5,000 suits related to the Dalkon Shield and the continuation of that litigation threatened the debtor's efforts at reorganization). See also Edgeworth, 993 F.2d at 56 ("Moreover, no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds.").

As the First Circuit determined in Tringali v. Hathaway Machinery Co., 796 F.2d 553, 560 (1st Cir. 1986), Section 541 is broad enough to cover an interest in liability insurance proceeds inasmuch as the debtor has a right to have the insurance company pay money to satisfy debts that accrued through the debtor's negligent behavior. In Hathaway Machinery Co., the debtor had a $500,000 insurance policy, one tort victim already had a judgment for $1,000,000, and the debtor was being sued by a second tort claimant. Id. at 556. The First Circuit explained that policy reasons justified its holding that the liability insurance was property of the estate because a "contrary holding could start a race to the courthouse whenever a policy of insurance is too small to satisfy several potential plaintiffs." Id. at 560. A race to the courthouse could frustrate a bankruptcy court from marshaling the insurance proceeds and from arranging their distribution to maximize legitimate creditor claims while preserving assets of the estate. Id. See also Citibank, N.A. v. White Motor Corp. (In re White Motor Corp), 761 F.2d 270, 274 (6th Cir. 1985)("Were it not for the fact that all parties are in agreement that the insurance coverage is adequate to cover all filed claims, it would be necessary to liquidate all claims before any insurance money was paid out; otherwise, some claimants would receive an unequal portion of the insurance assets of the debtor."), rejected on other grounds, Green v. Welsh, 956 F.2d 30, 35 (2nd Cir. 1992)(holding that the personal injury tort victims should be allowed to proceed against the debtor notwithstanding the discharge injunction to establish liability against an insurance company). But see Edgeworth, 993 F.2d at 56 n.21 (dispelling the concern in mass tort cases that proceeds of a policy must be part of the bankruptcy estate "to prevent a free-for-all against the insurer outside the bankruptcy proceeding" because once the policy, as opposed to the proceeds, is deemed property of the estate, the automatic stay would "protect both the bankruptcy estate and the claimant's interest in the proceeds of the policy.").

-11-

The fact that the availability of insurance to pay claims against the estate would have an effect on the estate is axiomatic. Accordingly, those claims would most likely fall within a bankruptcy court's "related to" jurisdiction, provided that retention of jurisdiction by the bankruptcy court would not conflict with the prohibition against a bankruptcy court adjudicating personal injury claims. 28 U.S.C. §§ 157(b)(5), 1334(b); Belcufine v. Aloe, 112 F.3d 633, 636 (3rd Cir. 1997)(holding that claims are related to a bankruptcy case if the resolution of the dispute affects the administration of the bankruptcy estate). The mere fact that the use of insurance proceeds to pay claims against the estate has an effect on the administration of the estate, however, is an insufficient reason to deem those proceeds property of the estate pursuant to Section 541 of the Bankruptcy Code. Moreover, once a liability policy itself is property of the estate, the concerns mentioned by the First Circuit in Hathaway Machinery Co. are adequately addressed without the necessity of also finding that the proceeds of that policy are property of the estate.

**D. The Debtor's Liability Insurance Policy**

The Policy is a $1,000,000 liability insurance policy and is exactly the type of insurance policy described in Appleman on Insurance as providing a form of third-party indemnity coverage. More specifically, the Policy covers incidents arising from the acts or omissions of its truck drivers and CCI is contractually bound to "pay those sums that the [the Debtor] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." In the event of a covered accident, the Policy instructs the Debtor to "[a]ssume no obligation, make no payment or incur no expense without our consent, except at the [Debtor's] own cost."

Under the language of the Policy, payment of the insurance proceeds is invoked when the Debtor incurs liability to a third party. As soon as that liability is incurred, the Debtor accrues a cause of action under the policy against CCI to defend the potential claim, and there is no requirement under the terms of the Policy that the Debtor first discharge its liability by paying the anticipated judgment of the tort claimant. The only right that accrues to the estate under Section 541 of the Bankruptcy Code is the right to have CCI protect the Debtor's existing assets from the consequences of the Debtor's allegedly tortious conduct to the extent of the available insurance proceeds under the Policy. Importantly, this right arises under the terms of the Policy; it is not a right to the proceeds of the Policy. The Debtor's interest in the Policy is the cause for CCI to pay the

amount owed to a tort claimant; the Debtor–a mere conduit–never actually receives the direct benefit of the proceeds, and its coffers are not enlarged should CCI be obligated to pay on a claim. The other unsecured creditors of the Debtor's estate have no legitimate expectation of profiteering from the allegedly wrongful conduct of the Debtor's employee and would certainly not have any claim to liability insurance proceeds under non-bankruptcy law. In sum, the Debtor holds legal title to the Policy; equitable title to the proceeds of the Policy are vested in the potential tort claimants and the proceeds never become property of the estate under Section 541(d) of the Bankruptcy Code. The Trustee has failed to make a prima facie case that the proceeds of the CCI liability insurance policy are property of the estate.

### III. CONCLUSION

Holder and the other known tort claimants will be granted relief from the automatic stay to pursue the Debtor and CCI under non-bankruptcy law. The Debtor does not have any equitable interest in the proceeds of the Policy, and there are no secondary effects in this case that warrant an injunction against the tort claimants pursuing their litigation outside of this Court.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. A separate order setting forth the terms of a consent order submitted by the parties shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 21th day of April 2005.

_____
United States Bankruptcy Judge
Middle District of North Carolina

-13-